**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2026 IL App (3d) 240680-U

Order filed August 11, 2026

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2026

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of the 18th Judicial Circuit, |
| Plaintiff-Appellee, | ) | Du Page County, Illinois. |
| | ) | |
| v. | ) | Appeal No. 3-24-0680 |
| | ) | Circuit No. 15-CF-1115 |
| GIUSEPPE RESSA, | ) | |
| | ) | The Honorable |
| Defendant-Appellant. | ) | Margaret O'Connell, |
| | | Judge, Presiding. |

_____

JUSTICE ANDERSON delivered the judgment of the court.
Presiding Justice Hettel and Justice Peterson concurred in the judgment.
Justice Peterson also specially concurred.

_____

**ORDER**

¶ 1   *Held*:   The trial court did not err by granting the State's motion to dismiss the claims in defendant's postconviction petition alleging ineffective assistance of counsel because the defendant did not present sufficient evidence to establish a *bona fide* doubt as to his fitness to stand trial or show that counsel should have offered mitigating evidence at sentencing.

¶ 2   Defendant was convicted of multiple counts of child abduction, aggravated criminal sexual abuse, and aggravated kidnapping, and those convictions were upheld on appeal. Defendant filed

a postconviction petition asserting several claims that trial counsel had provided constitutionally ineffective legal assistance. The trial court advanced to second-stage proceedings on the petition.

¶ 3        The State filed a motion to dismiss the petition that was granted by the trial court. On appeal, this court affirmed in part and remanded to the trial court for its initial consideration of two ineffective assistance claims made in defendant's petition. On remand, the State filed a motion to dismiss those two claims, and the trial court again granted the motion after a hearing.

¶ 4        Defendant now appeals from the dismissal of the remaining two counts of his postconviction petition. We affirm.

¶ 5                                    I. BACKGROUND

¶ 6        In 2015, defendant Giuseppe Ressa was charged in the Du Page County circuit court with several counts of child abduction, aggravated criminal sexual abuse, and aggravated kidnapping. *People v. Ressa*, 2024 IL App (3d) 220259-U, ¶ 4. Asserting a reasonable belief that defendant would seek an insanity defense, the State filed a preliminary motion to appoint a psychologist pursuant to section 115-6 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-6 (West 2014)). The trial court granted the State's motion and appointed Dr. John Murray to examine defendant. *Id*. In his report, Dr. Murray concluded that defendant likely suffered from a personality disorder and that his "symptoms were not consistent with an insanity defense." *Id*. ¶ 5.

¶ 7        After a two-day bench trial in 2017, defendant was convicted of aggravated criminal sexual abuse and five counts of child abduction. *Id*. ¶¶ 6, 9. Prior to sentencing, the trial court ordered a sex offender evaluation, which was conducted by Dr. Lesley Kane. Dr. Kane concluded that defendant suffered from "Delusional Disorder, Grandiose Type (with religious content)," noting that he called himself "a prophet, God, and Jesus." In her report, Dr. Kane stated that defendant was "aware that an open discussion of certain beliefs would generate criticism" and that "[h]e is

2

more inclined to share his beliefs with those he is most comfortable with; primarily close family members." Consequently, defendant acted in ways designed to "keep his unconventional thoughts to himself, making his mental illness less apparent." The trial court sentenced defendant to an aggregate term of 20 years in prison. *Id.* ¶ 9.

¶ 8        Defendant appealed his convictions, arguing, in relevant part, that his trial counsel had rendered ineffective assistance. The appellate court affirmed the convictions. *People v. Ressa*, 2019 IL App (2d) 170439, ¶¶ 2, 27.

¶ 9        On June 24, 2020, defendant's private counsel filed a postconviction petition, arguing that trial counsel had provided constitutionally ineffective assistance by (1) not raising or investigating an insanity defense, (2) causing defendant to waive his right to testify at trial, (3) misleading him during plea negotiations and not conveying a plea offer, (4) failing to call any witnesses or to present mitigating evidence during sentencing, and (5) failing to argue that defendant was unfit to stand trial. *Ressa*, 2024 IL App (3d) 220259-U, ¶ 25. The petition also requested funds to hire an expert to aid in making his postconviction claims and for a retrospective evaluation and hearing on his fitness to stand trial. The trial court denied those requests, concluding that they were not needed to resolve the issues raised in the postconviction petition. *Id.* ¶ 17.

¶ 10        At the second stage of the postconviction proceedings, the State filed a motion to dismiss the petition. Declining the trial court's offer to amend the petition, defendant's counsel instead filed a lengthy response to the dismissal motion. *Id.* ¶ 18. Counsel subsequently filed an amended response, attaching a new affidavit from defendant that added a claim alleging effective assistance of counsel during plea negotiations. The amended response also argued that the State's dismissal motion had not addressed his claim that trial counsel failed to present sufficient psychological or psychiatric evidence during sentencing. *Id.* ¶ 19.

3

¶ 11    In his affidavit, defendant also asserted that he suffered from a delusional disorder at the time of his arrest and trial. *Id*. ¶ 11. He believed he was "a prophet turned God," and that he was "sent to earth to save children," which included "pray[ing] over them" and "hav[ing] closeness with kids to *** see [them] again in heaven." *Id*. Defendant's affidavit also claimed that defense counsel failed to inquire into his mental state despite knowing of his highly unusual conduct and writings, in which he claimed to have been hearing voices and experiencing visions. Defendant also asserted that his delusional thoughts had hampered his decision-making ability.

¶ 12    Defendant also attached affidavits to his postconviction petition from his mother, brother, and aunt that recounted the physical and psychological abuse he had suffered as a child, as well as the deterioration of his mental state prior to the conduct underlying the instant charges. In her affidavit, his aunt noted a family history of schizophrenia. *Id*. ¶ 15. In addition, defendant attached an affidavit from Dr. Gregory Cox, a licensed psychologist, who had reviewed the reports submitted by Dr. Murray and Dr. Kane. *Id*. ¶ 16. Dr. Cox concluded that Dr. Murray relied too heavily on defendant's own assertions of sanity, failed to conduct proper testing, and should have interviewed members of defendant's family prior to rendering his opinion, making his report unreliable and biased in favor of the prosecution. *Id*.

¶ 13    Following a second-stage hearing on defendant's petition in June 2022, the trial court granted the State's motion to dismiss. *Id*. ¶¶ 20, 22. Defendant appealed the dismissal, arguing that it included three claims related to sentencing and fitness to stand trial that were not included in the State's dismissal motion. *Id*. ¶ 42. In an unpublished order entered on January 25, 2024, this court found that two of those three claims had been improperly dismissed because they were pled but not addressed in the State's motion to dismiss. ¶¶ 52, 54. Those claims argued that trial counsel rendered ineffective assistance because they (1) did not raise and develop the issue of his fitness

4

to stand trial and (2) did not retain expert testimony or other mitigating evidence to aid him during sentencing. *Id*. ¶¶ 51–54. We remanded the cause for additional second-stage proceedings on those two claims. *Id*. ¶¶ 52, 54.

¶ 14       On remand, the defendant was represented by the public defender's office, which filed a motion to reconsider the denial of his prior request to hold a retrospective fitness evaluation and for leave to amend his postconviction petition. The trial court denied the motion to reconsider. The State then filed a motion to dismiss defendant's remaining two postconviction claims, and defendant filed a response.

¶ 15       The trial court granted the State's dismissal motion on November 25, 2024. The court noted that defendant's "mental condition was raised before trial" and that he was "examined prior to trial, and it does not appear from what [the court has] read in the record that the idea of pursuing an insanity defense was addressed by trial counsel." The court also suggested that, in any event, Dr. Murray's testimony supported the finding that defendant was fit to stand trial. It also found that the testimony and evidence offered by Dr. Murray and Dr. Kane during sentencing was sufficient. Defendant filed a timely notice of appeal, and the Office of the State Appellate Defender was appointed to represent him.

¶ 16                                    II. ANALYSIS

¶ 17       On appeal, defendant raises two issues: whether his postconviction petition presented a substantial showing that trial counsel provided ineffective assistance by failing to (1) raise and develop a claim that he was unfit to stand trial and (2) retain expert testimony and submit mitigating evidence during sentencing. In considering the dismissal of a postconviction petition at the second stage without an evidentiary hearing, our review is *de novo*. *People v. Hall*, 217 Ill. 2d 324, 334 (2005).

5

¶ 18                                     A. Unfitness

¶ 19          The test for ineffective assistance of counsel was established in *Strickland v. Washington*,

466 U.S. 668 (1984). Under that test, the defendant bears the burden of showing both that counsel's

errors were so serious that the representation fell below an objective standard of reasonableness

and that the deficient performance caused prejudice to the defendant. *Id*. at 687-88. Defendant

contends that his trial counsel's failure to raise and investigate the issue of his fitness to stand trial

constituted ineffective assistance due to the presence of a *bona fide* doubt as to his fitness. When

a *bona fide* doubt is present, a defendant is entitled to a fitness hearing. *People v. Sandham*, 174

Ill. 2d 379, 382 (1996). Here, defendant argues that sufficient facts existed prior to trial to require

his counsel to raise and investigate the claim. Due to his counsel's failure to act, defendant asserts

that his constitutional right to effective assistance of counsel was violated.

¶ 20          In Illinois, a defendant is presumed fit to stand trial unless his physical or mental condition

prevents him from understanding the nature and purpose of the legal proceedings or from assisting

defense counsel. 725 ILCS 5/104-10 (West 2020). To establish the prejudice prong of the

*Strickland* test, a defendant must show that the trial court would have found a *bona fide* doubt of

fitness if counsel had provided effective assistance. *People v. Easley*, 192 Ill. 2d 307, 318-19

(2000). In determining whether a defendant has overcome the presumption of fitness, courts are

guided by multiple factors, including:

> "a defendant's irrational behavior, the defendant's demeanor at trial, and any prior medical
>
> opinion on the defendant's competence to stand trial. There are 'no fixed or immutable
>
> signs which invariably indicate the need for further inquiry to determine fitness to proceed;
>
> the question is often a difficult one in which a wide range of manifestations and subtle

6

nuances are implicated.' " *Id*. at 319 (quoting *People v. Eddmonds*, 143 Ill. 2d 501, 518 (1991)).

¶ 21　　Thus, a defendant's right to postconviction relief hinges on a showing that the trial court would have found a *bona fide* doubt of fitness. *Easley*, 192 Ill. 2d at 319. "Since defendant's postconviction petition was dismissed without an evidentiary hearing, '[t]he critical inquiry is whether the facts presented in defendant's postconviction petition raised a *bona fide* doubt of his fitness to stand trial.' " *Id*. (quoting *People v. Johnson*, 183 Ill. 2d 176, 193 (1998)). During second-stage proceedings, the burden remains on defendant to establish a substantial showing of a constitutional violation. *People v. Domagala*, 2013 IL 113688, ¶ 35.

¶ 22　　In relevant part, defendant's postconviction petition alleged that, in light of his extensive writings that reflected the ongoing and pervasive nature of his delusional thoughts, trial counsel's interactions with defendant and his close family members, and the submitted psychological reports, counsel should have recognized a *bona fide* doubt as to his fitness to stand trial and to assist in his own defense. That doubt should have prompted counsel to undertake additional investigation into his fitness. Instead, counsel "never even discussed Murray's or Kane's findings with [defendant] and did not ask if he wanted or needed an evaluation or further testing." The petition also asserted that defendant's affidavit "makes it clear that his attorneys neither pursued the subject of his mental health nor sought to understand the actual meaning of petitioner's various writings which were introduced into evidence as reflect[ive] of bad intent." Defendant attached several affidavits to the petition, including his own as well as ones submitted by his mother, aunt, and brother, legal counsel, and Dr. Cox, a licensed psychologist.

¶ 23　　In dismissing defendant's fitness claim, the trial court relied heavily on evidence adduced by Dr. Murray, who had been appointed at the State's request to evaluate defendant prior to trial

in connection with a possible insanity determination. In his report, Dr. Murray found that defendant's symptoms were "not consistent with the insanity verdict" but concluded that he "likely" suffered from a personality disorder. Dr. Murray did not personally observe any demonstration that defendant was suffering from delusions during his interviews and did not comment on their prior existence.

¶ 24    The conclusion and methodology of that report were sharply criticized by Dr. Gregory Cox, a licensed psychologist who provided defendant with a "limited and initial opinion" based on his review of the reports submitted by Dr. Murray and Dr. Kane. In his report, Dr. Cox deemed Dr. Murray's review to be unreliable and contrary to the American Psychological Association's forensic guidelines because it was based on only defendant's behavior and failed to include any objective testing. He noted that the conclusions in the report "relied heavily upon [defendant] self-proclaiming his sanity without properly corroborating such claims, while ignoring documentation and data to the contrary." For those reasons, it should not have been used "to determine sanity and it should have been evident to trial counsel that further evaluation was needed."

¶ 25    The sentencing report submitted by Dr. Kane also recognized defendant's delusions, concluding that his "symptom presentation seems to be more consistent with a delusional disorder." Dr. Kane also noted that defendant's years of "journaling shows distractibility, disorganization, and loose associations" and that "religious, and referential delusions are apparent throughout the journals," with defendant repeatedly referring to himself as "a prophet, God, and Jesus." Dr. Kane diagnosed defendant with a "delusional disorder, Grandiose Type (with religious content), continuous."

¶ 26    The affidavits submitted by defendant's family members expressed their concerns about defendant's deteriorating mental health and chronicled attempts by his mother, with whom he

lived, and his aunt to discuss those concerns with defense counsel prior to trial. Their affidavits described trial counsel's repeated delay of those discussions, resulting in counsel never hearing or addressing their concerns. In her affidavit, defendant's aunt maintained that she had informed trial counsel that defendant's grandfather had suffered from schizophrenia and that counsel did not inquire further. An affidavit submitted by one of defendant's trial lawyers stated that, while he had no independent memory of that familial diagnosis, "defendant's mother did relay concerns about the defendant's involvement in a church and corresponding changes in the defendant's personality and behavior as well as his extreme [and] bizarre religious beliefs."

¶ 27    After holding a hearing on the State's motion to dismiss the ineffective assistance claim based on counsel's failure to investigate and raise his fitness to stand trial, the trial court stated that "[m]ost of this petition pertains to the failure of trial counsel to pursue the insanity defense. Much of the argument here today has centered around an alleged insanity defense." The court also acknowledged defendant's argument that his counsel was ineffective for failing to obtain "an expert to consider his fitness to stand trial."

¶ 28    In reviewing a fitness claim, the relevant timeframe for evidence creating a *bona* fide doubt of fitness is the time of trial. *Easley*, 192 Ill. 2d at 318–19 (stating "to establish that his trial counsel's alleged incompetency prejudiced him within the meaning of *Strickland*, defendant must show that facts existed at the time of his trial that would have raised a *bona fide* doubt of his ability to understand the nature and purpose of the proceedings and to assist in his defense"). After thoroughly reviewing defendant's postconviction petition, as well as the attached affidavits, we conclude that the facts presented, even if accepted as true (see *Domagala*, 2013 IL 113688, ¶ 35), were insufficient to create a *bona fide* doubt as to defendant's fitness to stand trial and assist in his own defense. See *Easley*, 192 Ill. 2d at 319.

9

¶ 29        Although Dr. Murray determined that defendant suffered from a personality disorder that would require additional testing before its effect on his conduct could be determined, his report was submitted in 2015, long before the start of the 2017 trial. Moreover, the affidavits from defendant's family similarly referenced their concerns and observations prior to and at the time of the charged offense, not at the time of trial.

¶ 30        In his affidavit, defendant offers only his own subjective statements that he suffered from a delusional disorder at the time of his arrest, stating that he believed that he was "a prophet turned God," and had been "sent to earth to save children." He claimed that his defense counsel failed to inquire into his mental state or its effect on his "ability to communicate with them or to assist in [his] defense" despite being aware of his unusual conduct and writings, which asserted that he had been hearing voices and experiencing visions. What defendant's affidavit fails to allege, however, is whether, or how, those claimed hallucinations affected his ability to understand the nature of the proceedings or assist his counsel. He also did not offer any evidence to show his "irrational behavior, *** demeanor at trial, and any prior medical opinion on [his] competence to stand trial" that would have "invariably indicate[d] the need for further inquiry to determine fitness to proceed." *Eddmonds*, 143 Ill. 2d at 518. In the absence of any evidence that, at the time of trial, defendant was legally unfit to stand trial, we conclude that he failed to create a *bona fide* doubt as to his fitness.

¶ 31        In the absence of a *bona fide* doubt of fitness, defendant failed to establish the prejudice prong of the *Strickland* test. See *Easley*, 192 Ill. 2d at 318-19 (stating a *bona fide* doubt of fitness was needed to establish prejudice due to trial counsel's alleged ineffectiveness). Accordingly, we hold that the trial court properly dismissed the fitness claim in defendant's postconviction petition.

¶ 32                            B. Expert Testimony at Sentencing

¶ 33 Defendant next argues that his trial counsel provided constitutionally ineffective assistance by not retaining expert testimony or offering any mitigating evidence during his sentencing. While counsel argued that a sentence of probation was the best means of providing defendant with much-needed mental health treatment, that argument was not supported by testimony from an examining expert or with any other mitigating evidence.

¶ 34 Because sentencing is a critical stage of a criminal proceeding (*People v. Smith*, 133 Ill. App. 3d 574, 578 (1985)), defendant was entitled to effective assistance of counsel during sentencing (*People v. Young*, 153 Ill. 2d 383, 402 (1992)). In reviewing whether trial counsel was constitutionally ineffective during sentencing, we again apply the *Strickland* test. Under that test, defendant must prove that (1) counsel committed errors so serious that the representation fell below an objective standard of reasonableness and (2) those deficiencies prejudiced defendant. *Strickland*, 466 U.S. at 687-88. To survive the State's motion to dismiss at a second-stage postconviction proceeding, a defendant must make a substantial showing of each of those two prongs. *People v. Towns*, 182 Ill. 2d 491, 507 (1998).

¶ 35 The crux of defendant's sentencing claim is that counsel failed to provide any mitigating evidence, such as the affidavit from Dr. Cox that was attached to the postconviction petition. In that affidavit, Dr. Cox described several errors in the reports prepared by Dr. Murray and Dr. Kane. Those errors included (1) giving more weight to information provided by defendant after his arrest than to the contradictory evidence of his longstanding beliefs found in his writings and prior interactions, (2) noncompliance with APA forensic guidelines, (3) the absence of additional testing to diagnose defendant's mental health issues, which Dr. Murray had also suggested, and (4) a lack of any corroboration of the information provided by defendant. Based on his limited review, Dr. Cox believed that defendant's extensive writings exhibited psychotic thought processes and

11

required additional expert evaluation to determine the severity of his mental health issues and how they impacted his conduct.

¶ 36    At sentencing, the State presented extensive testimony in aggravation from Dr. Murray, an independent examiner, and Dr. Kane, an independent contractor for DuPage County Probation In-Court Services. They both testified that defendant suffered from a pedophiliac disorder and presented a danger to children. Dr. Kane also stated his belief that defendant required the intensive, inpatient treatment that he could obtain at the Big Muddy Correctional Center. Offering additional testimony to establish defendant's mental illness and need for treatment via another expert witness or the observations of defendant's family members would have been merely cumulative.

¶ 37    Before this court, defendant notes that his attorneys' strategy at the sentencing hearing was to argue that he needed mental health treatment, a need that counsel maintained could be best met with a sentence of probation. He does not argue that counsel's strategy was inherently defective. Indeed, counsel's strategy may constitute ineffective assistance only if it is so unsound that it fails to offer any meaningful adversarial testing (*People v. Leeper*, 317 Ill. App. 3d 475, 482 (2000)), a claim unsupported by our review of the trial record.

¶ 38    Here, the two independent medical experts agreed that defendant suffered from a mental illness and required inpatient treatment. Defendant has not cited any Illinois case law requiring testimony from more than two independent experts to avoid a finding of ineffective assistance of counsel. We decline to hold, for the first time, that defendant's counsel was ineffective simply for failing to provide a third expert witness at sentencing.

¶ 39    Our review of the record on appeal shows that defense counsel cross-examined both independent experts at the sentencing hearing. Defendant does not point to any specific deficiencies in his counsel's questioning that could have been remedied if an additional expert had

12

been retained. Instead, he offers only vague assertions that the lack of a third expert prevented defense counsel from "effectively challeng[ing]" the experts' sentencing testimony. Our review of the proceeding fails to support that claim. We conclude that defendant did not make a substantial showing that trial counsel provided ineffective assistance at sentencing by failing to provide objectively reasonable representation.

¶ 40                                    III. CONCLUSION

¶ 41         For the reasons stated, we affirm the circuit court of Du Page County's November 25, 2024, dismissal of the ineffective assistance claims in defendant's postconviction petition relating to his fitness to stand trial and trial counsel's failure to offer expert testimony and mitigating evidence during sentencing.

¶ 42         Affirmed.

¶ 43         JUSTICE PETERSON, specially concurring:

¶ 44         I concur with the majority that the trial court's dismissal of defendant's petition at the second stage should be affirmed. However, I write separately to point out significant additional reasons and facts in the record that support affirmance.

¶ 45         Matters admissible on the issue of fitness include: "(1) The defendant's knowledge and understanding of the charge, the proceedings, the consequences of a plea, judgment or sentence, and the functions of the participants in the trial process; (2) The defendant's ability to observe, recollect and relate occurrences, especially those concerning the incidents alleged, and to communicate with counsel; (3) The defendant's social behavior and abilities; orientation as to time and place; recognition of persons, places and things; and performance of motor processes." 725 ILCS 5/104-16 (West 2020). "Relevant factors that a trial court may consider in assessing whether a *bona fide* doubt of fitness exists include a defendant's irrational behavior, the

13

defendant's demeanor at trial, and any prior medical opinion on the defendant's competence to stand trial." *People v. Easley*, 192 Ill. 2d 307, 319 (2000). Additionally, "[f]itness speaks only to a person's ability to function within the context of a trial. It does not refer to sanity or competence in other areas. A defendant can be fit for trial although his or her mind may be otherwise unsound." *Id.* at 320.

¶ 46        Here, the affidavits of defendant and Dr. Cox both focus almost entirely on issues pertaining to insanity and the minimal statements related to fitness merely amount to conclusions. Specifically, Dr. Cox's affidavit contains only one paragraph addressing fitness. That paragraph makes a mere conclusion that the writings by defendant that were referenced in Dr. Kane's and Dr. Murray's reports raised a bona fide doubt as to whether he could meaningfully assist in his defense. These writings were made at least a year and a half prior to trial as they were made prior to defendant's arrest and are only marginally relevant, if at all, to the question of fitness for trial. The affidavit does not state any single fact to support the doctor's conclusion. Moreover, the conclusion is based upon writings that were made prior to the crime and that is the timeframe that is relevant to the question of sanity, not fitness. Dr. Cox's affidavit does not contain one factual allegation regarding defendant's behavior leading up to or during trial that would lead a defense attorney to question defendant's fitness. Instead he makes a conclusory allegation, with no foundation, that the writings would have led a psychologist to question defendant's fitness. However, since there were no allegations of irrational behavior or demeanor by defendant that would lead defense counsel to question defendant's fitness, there would be no reason for defense counsel to seek out an evaluation by a psychologist. Thus, Dr. Cox's affidavit, as it merely contains a conclusory statement without foundation regarding

14

fitness, does not provide support for defendant's claim of ineffective assistance of counsel regarding the fitness issue.

¶ 47        Defendant's affidavit contains slightly more allegations regarding fitness than Dr. Cox's. However, the allegations are similarly conclusory and also self-serving. Specifically, defendant alleges that "lack of sleep made it even harder for [him] to think clearly and process information," his "thinking was consistently interrupted by persistent religious thoughts or messages which impaired [his] ability to process information, communicate with [his] lawyers and to make decisions," and "Godly messages and visions continued to impact much of [his] decision making including decisions relating to [his] defense and trial." However, as stated by the dissent in *People v. Brown*, 236 Ill. 2d 175, 206 (2010) (J. Garman, dissenting), these allegations "are descriptive, but lack specific factual content. He does not provide a single example of something that he failed to understand or that he would have questioned. He offers no evidence regarding his demeanor or that he acted irrationally at trial ***." (internal quotation marks and citations omitted). Even if we were to accept defendant's conclusory statements that he was having issues processing information, he has not made any allegations or provided any evidence that there were any outward manifestations of this issue that would have put counsel on notice that defendant's fitness should be questioned, such as irrational behavior or even telling counsel he was confused.

¶ 48        Instead, as defendant's own affidavit indicates, he provided counsel with information he believed to be useful and he listened to and followed counsel's advice. Defendant sets forth a very detailed description of his discussions with counsel regarding the option of testifying at trial. This description demonstrates impressive recall of the issue discussed, the logic behind counsel's advice that he should not testify and the deliberative process of his decision on the

15

issue. He sets forth what counsel advised him and why he changed his mind about testifying in reliance on counsel's advice. This demonstrates that not only did he understand the nature of the proceeding, he was able to and did assist in his defense, belying any claims of unfitness. Again, defendant's affidavit is simply devoid of any allegations of irrational behavior or inappropriate demeanor in court, in the county jail, or in his meetings with his lawyers at or near the time of his trial.

¶ 49       In addition to the affidavits being insufficient to substantiate defendant's claim of ineffective assistance of counsel regarding fitness, the record is devoid of evidence that would support a bona fide doubt as to defendant's fitness. See *People v. Moore*, 189 Ill. 2d 521, 536 (2000) (concluding that the trial record belied defendant's claims regarding fitness). Specifically, there is no indication that defendant acted irrationally during any hearings or trial. There is no indication that anyone—his attorneys,[1] the court, correctional staff, medical staff at the jail— expressed concern over defendant's fitness or observed behavior that would cause them to do so. Moreover, when the court addressed defendant to determine if he was going to testify and if he understood it was his decision to make, defendant responded appropriately. Likewise, the defendant made a statement during sentencing when allowed by the court and his statement was appropriate. There was nothing that would cause counsel or the court to believe that defendant was having difficulty understanding the proceedings. See *e.g.*, *id.* at 536-37 (reviewing the trial record and citing defendant's appropriate interactions with the court as showing that he exhibited rational and competent behavior).

¶ 50       Further, there are various cases where our courts have found that ineffective assistance claims pertaining to fitness were properly dismissed without an evidentiary hearing where the

_____

[1]Defendant had two attorneys.

16

allegations and evidence regarding fitness were similar to or more compelling than in the case at bar. See *e.g.*, *Easley*, 192 Ill. 2d at 318-323 (concluding that dismissal without an evidentiary hearing was not error when (1) defendant made several irrational statements during the course of trial, (2) psychological examinations prepared for the postconviction petition indicated defendant had long-standing mental problems at the time of trial that affected his ability to understand written and oral instructions and that when under extreme stress defendant suffered from thought and personality disorder, paranoia, and episodic breaks with reality, and (3) defendant had alleged he requested a brain scan because something was wrong with his brain, and when he gets upset or angry he blanks out and he cannot think clearly); *People v. Johnson*, 183 Ill. 2d 176, 184, 192-95 (1998) (concluding that dismissal without an evidentiary hearing was not error when defendant provided the opinion of a psychologist that defendant was intellectually incapable of understanding the court's admonitions regarding a jury waiver); *Brown*, 236 Ill. 2d at 200, 203-05 (J. Garman, dissenting) (concluding that dismissal at the first stage was appropriate where defendant had alleged that counsel knew he was taking three psychotropic medications before and after his arrest, counsel knew he had attempted suicide, and the psychotropic medications made it so he was unable to understand and unable to think); *Moore*, 189 Ill. 2d at 535-36 (concluding that dismissal without an evidentiary hearing was not error when defendant had been taking psychotropic drugs, and had attention deficit disorder, a traumatic brain injury, a learning disability, and a low IQ).

¶ 51        Based on this record we cannot say that defendant has made a substantial showing that counsel was ineffective. Counsel's performance was not deficient as defendant has not pointed to any facts that would have led a reasonably competent attorney to question his fitness. Additionally, defendant has not made a substantial showing that the court would have found a

17

bona fide doubt as to his fitness or that he would have been found unfit. Thus, the court did not err by dismissing the ineffective assistance claims regarding fitness at the second stage. If this court were to accept defendant's argument, then any time insanity was investigated during pretrial proceedings and fitness was not raised, a defendant could come back years later and use the evidence gathered during the insanity investigation to raise an ineffective assistance claim as to fitness via postconviction petition and advance to the third stage with little or no evidence relevant to unfitness. In essence, it would open the floodgates.